IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02125-PAB-NRN

JOHN PATRICK FLETCHER, and
ZACHARIAH CLARK DOBLER,

Plaintiff,

v.

DEAN WILLIAMS,
AUSTIN CHRESTENSEN,
SIMON DENWALT,
SANDRA BROWNLEE,
JEFFREY ROMACK,
BRITTNEY GODWIN,

Defendants.

---

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S VERIFIED MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE
AGAINST DEFENDANT DEAN WILLIAMS (Dkt. #46)
and
DEFENDANTS' MOTION TO DISMISS VERIFIED AMENDED COMPLAINT UNDER
FED. R. CIV. P. 8(a) AND 12(b)(6) (Dkt. #73)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This case is before the Court pursuant to Orders (Dkt. #47 & #75) issued by

Chief Judge Philip A. Brimmer referring two motions:

- Plaintiffs John Patrick Fletcher and Zacharaiah Clark Dobler's ("Plaintiffs") Verified Motion for Summary Judgment as to Claim One Against Defendant Dean Williams ("Motion for Summary Judgment"). (Dkt. #46.) Defendant Dean Williams filed a response (Dkt. #74), and Plaintiffs filed a reply. (Dkt. #80.)

- Defendants Dean Williams, Austin Chrestensen, Simon Denwalt, Sandra Brownlee, Jeffrey Romack, and Brittney Godwin's ("Defendants") Motion to Dismiss Verified Amended Complaint Under Fed. R. Civ. P. 8(a) and 12(b)(6)

("Motion to Dismiss") (Dkt. #73), to which Plaintiffs responded (Dkt. #79), and Defendants replied. (Dkt. #51.)

The Court heard argument on said motions on June 27, 2022. (*See* Dkt. #95.) The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** and Plaintiffs' Motion for Summary Judgment be **DENIED**.

## BACKGROUND

The Thirteenth Amendment states, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII. The plain language of the amendment demonstrates that its "restriction on involuntary servitude does not apply to prisoners." *Ruark v. Solano*, 928 F.2d 947, 949–50 (10th Cir. 1991) *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

In 2018, Colorado voters approved a referendum amending the state constitution to remove a similar exception. *See* Colo. Const. art. II, § 26 (which now provides, in full, "There shall never be in this state either slavery or involuntary servitude"). Plaintiffs, who are inmates in the Colorado Department of Corrections ("CDOC"),[1] bring suit against Dean Williams, the CDOC's Executive Director, and five CDOC case managers to challenge the CDOC's inmate work programs.

---

[1] At the time their Verified Amended Complaint (Dkt. #28) was filed, both Plaintiffs were housed at the Buena Vista Correctional Facility ("BVCF"). Mr. Dobler has since been moved to Limon Correctional Facility ("LCF").

But Plaintiffs do not bring any constitutional claims. Indeed, they bring no state claims at all. Perplexingly, while relying fundamentally on the change to the Colorado Constitution regarding involuntary servitude, Plaintiffs assert thirteen *federal statutory* claims against Defendants in their individual capacities. These include claims for violations of various provisions of the Trafficking Victims Protection Act ("TVPA") (specifically, 18 U.S.C. § 1584 & 1589) and the Racketeer Influenced and Corrupt Organizations Act ("RICO") (specifically, 18 U.S.C. §§ 1962(a)–(b)). Plaintiffs' argument appears to be that the change in the Colorado state constitutional change with respect to involuntary servitude now makes unlawful under *federal law* what was previously lawful in Colorado prisons. As described in more detail below, the Court is not convinced. If Plaintiffs are challenging the inamte work rules in Colorado correctional facilities as being violative of Colorado's amended state constitution, they should probably be suing under that state constitutional provision in Colorado state court, not federal court.

On February 14, 2022, Plaintiffs moved for summary judgment on their first TVPA claim against Defendant Williams. (Dkt. #46.) The Court, anticipating (correctly) that the response to the Motion for Summary Judgment would mirror Defendants' forthcoming Motion to Dismiss, ordered simultaneous briefing on the two motions. (*See* Dkt. #56.) In their Motion to Dismiss (Dkt. #73) and Defendant Williams' response (Dkt. #74) to Plaintiffs' Motion for Summary Judgment, Defendants argue that the Amended Complaint (Dkt. #28) fails to satisfy the requirements of Rule 8(a) of the Federal Rules of Civil Procedure and fails to state a claim under Rule 12(b)(6). Defendants also contend that they are entitled to qualified immunity.

## ANALYSIS

**I. Legal Standards**

    **a. Pro Se Plaintiffs**

Because Plaintiffs proceed pro se, the Court "review[s their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). Generally, if a pleading reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### b. Rule 8

The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Rule 8 are designed to meet these purposes. *See TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate Rule 8. Claims must be presented clearly and concisely in a manageable format that allows a court and a defendant to know what claims are being asserted, and enables a defendant to respond to the claims. *New Home Appliance Ctr., Inc., v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957). For the purposes of Rule 8(a), "[i]t is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5

570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The degree of specificity necessary to establish plausibility and fair notice, as required under Rule 8(a)(2), depends on the type of case. *See id.* at 1248 ("A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time.").

To fulfill his or her obligations under Rule 8 and state a claim in federal court, a plaintiff must explain what each defendant did to him, when the defendant did it, how the defendant's action harmed him, and what specific legal right he believes the defendant violated. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). "After all, these are, very basically put, the elements that enable the legal system to get weaving—permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits." *Id.*

A decision to dismiss a complaint pursuant to Rule 8 is within the trial court's sound discretion. *See Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992); *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969).

### c. Rule 12(b)(6)

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those

6

allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

As noted above, a claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft*, 556 U.S. at 678. To make such an assessment, the Court first discards those averments in the Amended Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678–79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### d. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

7

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the plaintiff has alleged a constitutional or statutory violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Qualified immunity applies unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232.

## II. Discussion

The Court finds that the Verified Amended Complaint does not fulfill Rule 8's mandate that a pleading contain a short and plain statement of the claims showing that Plaintiffs are entitled to relief.

As to the case managers—Defendants Chrestensen, Denwalt, Brownlee, Romack, and Godwin—Plaintiffs allege that they "cast their votes to assign prisoners . . . to perform involuntary servitude and forced labor," and "deliberately chose to force involuntary servitude and forced labor upon Plaintiffs." (Dkt. #28 at 9, ¶¶ 38–39.) These allegations are conclusory and devoid of any supporting facts. They are therefore implausible.

Most basically, while Plaintiffs claim over and over again in general terms that they were subject to "involuntary servitude" and "forced labor," they do not actually say what jobs or work they were required or forced to perform. Were they required to clean

8

their cells, cook food, stamp license plates, or merely take out the trash? We do not know.

Plaintiffs do allege that they were physically and mentally injured "while being forced to perform involuntary servitude and forced labor" on a few specific occasions: Mr. Fletcher alleges that he fell down a flight of stairs while carrying a food cart in August 2020, and Mr. Dobler alleges that he was burned and experienced anxiety attacks while working on various dates. (*Id.* at 6–7, ¶¶ 14–22.) But these injuries are not in any way linked to the affirmative acts of any of the named Defendants. Thus, Plaintiffs have not met their burden of including sufficient factual allegations to suggest that they are entitled to relief against these Defendants.

Plaintiffs allege Mr. Williams is responsible for the CDOC's Administrative Regulations ("AR") that authorize sanctions under the Code of Penal Discipline ("COPD") for an inmate's failure to work (*id.* at 12, ¶ 60–61), even though he had been informed that this was unconstitutional under Colorado law. (*Id.* at 10, ¶¶ 41–42.) Generally, a supervisor can only be held liable for his or her own deliberate intentional acts. *See Iqbal*, 556 U.S. at 676. There must be an affirmative link between an alleged constitutional or statutory violation and each defendant's participation, control or direction, or failure to supervise. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations and quotations omitted); *Dodds v. Richardson*, 614 F.3d 1185, 1200-1201 (10th Cir. 2010); *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."). The Court is not convinced that Plaintiffs' threadbare allegations establish that Mr. Williams personally

9

participated in violating Plaintiffs' constitutional[2] or statutory rights to be free from involuntary servitude. Beyond failing to identify the labor they allegedly were forced to engage in, Plaintiffs do not allege that Mr. Williams was *personally* involved in any specific instances of involuntary servitude and/or forced labor.

The Court also finds that Plaintiffs' Verified Amended Complaint fails to state a claim under Rule 12(b)(6).

Plaintiffs assert several claims pursuant to two provisions of the TVPA: 18 U.S.C. §§ 1584 and 1589. Section 1584 makes it a crime knowingly and willfully to hold another person "to involuntary servitude." Section 1589 prohibits "knowingly provid[ing] or obtain[ing] the labor or services of a person" by any of the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, .
> . . .

18 U.S.C. § 1589(a). Section 1595 provides a private right of action for a violation of §§ 1584 and 1589. *See* 18 U.S.C. § 1595.

Plaintiffs fail to state a claim under § 1584. The Supreme Court has defined "involuntary servitude" to "necessarily mean[ ] a condition of servitude in which the

---

[2] For their part, Plaintiffs attempt to clarify that they are not asserting civil rights claims under 42 U.S.C. § 1983. (See Dkt. #79 at 2, ¶ 1 ("this case is – NOT – a civil rights action, and is – NOT – brought under Title 42 of the U.S.C.").) This irrelevant; Rule 8 requires allegations of personal participation in violations of statutory rights as well as constitutional rights.

victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988). This phrase "clearly was borrowed from the Thirteenth Amendment" and has the same meaning in both places. *Id.* at 944–45. Importantly, "not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment. By its terms the Amendment excludes involuntary servitude imposed as legal punishment for a crime." *Id.* at 943. The Court agrees with Defendants that Plaintiffs cannot use a federal statute enacted to implement the federal Thirteenth Amendment to criminalize behavior the Amendment plainly permits—notwithstanding a change to the Colorado constitution. *See Aceves v. Jeffers*, 196 F. App'x 637, 639 (10th Cir. 2006) ("The Thirteenth Amendment explicitly exempts incarcerated prisoners from the involuntary servitude proscription.").

Moreover, "involuntary servitude" is limited to "compulsion of service through physical or legal compulsion." *Id.* at 947. That degree of coercion is not found in the CDOC's inmate work programs, and certainly no such unlawful coercion is described in the operative Complaint. Under Colorado law, "[a]ll persons convicted of any crime and confined in any state correctional facilities . . . shall participate in a rehabilitation and work program . . . under such rules and regulations as may be prescribed by the department." Colo. Rev. Stat. § 17-20-115. "Inmates who work in the department are not entitled to any right, benefit, or privilege applicable to employees of the state of Colorado." *Id.* § 17-20-117. Pursuant to the CDOC's COPD,[3] an inmate who fails to

---

[3] The Court may consider these regulations because the CDOC's disciplinary policy is referenced in the Verified Amended Complaint and central to Plaintiffs' claims. *See Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir. 1999).

11

work faces the following consequences: (1) up to 30 days' loss of good time; (2) up to 30 days' loss of privileges; or (3) up to 15 days' housing restriction sanction.[4] (Dkt. #73-1 at 29, AR 150-01, Class II Offenses & Authorized Sanction Matrix.) He or she cannot be punished by being placed in restrictive housing or administrative segregation. (*Id.*)

The threat that certain privileges may be forfeited if an inmate refuses to work does not implicate § 1584, which instead "encompasses those cases in which the defendant holds the victim in servitude by placing the victim in fear of such physical restraint or injury or legal coercion." *Kozminksi*, 487 U.S. at 952; *see Rather v. Suthers*, 973 P.2d 1264, 1266 (Colo. 1999) ("There is no constitutional right to good time credits."); *Lineberry v. United States,* 436 F. App'x 293, 296 (5th Cir. 2010) ("The fact that he may lose good-time credits under prison regulations if he refuses to work does not support a claim that Lineberry is subject to involuntary servitude in violation of the Thirteenth Amendment."); *Owuor v. Courville*, No. 2:11-CV-926, 2013 WL 7877306, at *4 (W.D. La. Aug. 7, 2013) (rejecting the plaintiff's allegation that being forced to work in order to gain access to the law library amounts to involuntary servitude), *report and recommendation adopted,* 2014 WL 949433 (W.D. La. Mar. 10, 2014); *Mayes v. Valdez*, No. 3:15-cv-3424-M-BH, 2017 WL 4075184, at *6 (N.D. Tex. Aug. 21, 2017) (recognizing that there is no constitutional right for a certain amount of day room recreation time or to have radios or televisions in jail), *report and recommendation adopted*, 2017 WL 4022890 (N.D. Tex. Sept. 13, 2017).

---

[4] A housing restriction sanction is served during an offender's time off from work or program assignments. (Dkt. #73-1 at 3, AR 150-01, Definitions.) It does not mean the same thing as "restrictive housing," which is a placement that requires an offender to be confined to a cell for at least 22 hours per day. (*Id.*)

Plaintiffs' failure to adequately allege what "work" they were forced to perform hamstrings the Court's "involuntary service" analysis because it does not violate the Thirteenth Amendment to compel detainees—even those who are not being detained for criminal convictions and therefore fall within the ambit of the constitutional ban on involuntary servitude—to perform general housekeeping chores, which have "been deemed to include fixing and distributing meals, scrubbing dishes, laundering the sheets and clothing of other inmates, cleaning communal bathrooms and shower stalls, removing trash from common areas, and sweeping, mopping, and vacuuming general-use hallways and rooms." *Mendez v. Haugen*, No. CV 14-4792 ADM/BRT, 2015 WL 5718967, at *5 (D. Minn. Sept. 29, 2015), *aff'd* (Feb. 22, 2016). The Court further notes that the sanction for failing to perform these duties in *Haugen* included administrative segregation, a much harsher punishment than any alleged here.

The Court likewise finds that consequences outlined in the COPD do not amount the "the abuse or threatened abuse of law or legal process" within the meaning of 18 U.S.C. § 1589. In fact, the COPD does the opposite. The term "abuse or threatened abuse of law or legal process" means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id.* § 1589(c)(1). Here, the COPD was designed to *further* the CDOC's statutory obligation to ensure that those convicted of a crime and confined in a state correctional facility participate in a work program. With their sparse present allegations, Plaintiffs have no claim to have been subject to forced labor.

Finally, the Court can summarily dispense with Plaintiffs' RICO claim. RICO provides a cause of action for those injured in business or property by reason of prohibited racketeering activities. 18 U.S.C. § 1964(c). "A RICO claim must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bixler v. Foster*, 596 F.3d 751, 760–61 (10th Cir. 2010). To withstand a Rule 12(b)(6) challenge, civil RICO claimants must set forth with particularity the predicate acts they allege give rise to a cause of action. *Cayman Exploration Corp. v. United Gas Pipeline Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989). As set forth above, Plaintiffs have not done so here. Because Plaintiffs cannot maintain a TVPA claim, their RICO claims, which are predicated on violations of 18 U.S.C. §§ 1584 and 1589, also fail.

Because Plaintiffs have not sufficiently alleged that their statutory rights were violated or that Defendants' conduct violated any clearly established law, Defendants are entitled to qualified immunity on Plaintiffs' claims.

The Court is puzzled why Plaintiffs chose such a convoluted and legally deficient way to accomplish what it suspects is Plaintiffs' ultimate goal: to challenge the CDOC's inmate work requirement under the *Colorado constitution.* Of course, such a challenge would properly be made in state, rather than federal, court. *See* 28 U.S.C. § 1331 (federal jurisdiction extends to cases arising under federal law). In any event, the Court essentially agrees with Defendants that this lawsuit is premised on Plaintiffs' misapprehension that §§ 1584 and 1589 can be used as a means to bring a state constitutional claim in federal court. It cannot, and this matter should be dismissed.

## RECOMMENDATION

Accordingly, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss Verified Amended Complaint Under Fed. R. Civ. P. 8(a) and 12(b)(6) (Dkt. #73) be **GRANTED**, and Plaintiffs' Verified Motion for Summary Judgment as to Claim One Against Defendant Dean Williams (Dkt. #46) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:    August 8, 2022
         Denver, Colorado    N. Reid. Neureiter
                                          United States Magistrate Judge